UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDREAS HELDWEIN,<br><br>  Plaintiff,<br><br>  v.<br><br>ZMD AMERICA, INC.,<br><br>  Defendant. | Case No. 4:13-cv-00440-BLW<br><br>MEMORANDUM DECISION AND ORDER |

# INTRODUCTION

Before the Court is Defendant ZMD America, Inc.'s Motion for Summary Judgment (Dkt. 31). This case stems from the demotion and termination of Plaintiff Andreas Heldwein by Defendant ZMD America, Inc. ("ZMDA"), a subsidiary of ZMDI, Inc. Heldwein alleges that his demotion and termination violated the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301–4333.[1] ZMDA's motion for summary judgment was argued on May 20, 2015, and taken under advisement. For the reasons set forth below, the Court will deny ZMDA's Motion.

---

[1] Plaintiff Heldwein has agreed to dismiss all other claims than the USERRA claims. Plaintiff's counsel confirmed this agreement at oral argument. The Court will therefore dismiss all other claims, including ___.

MEMORANDUM DECISION AND ORDER - 1

# BACKGROUND

This case stems from the demotion and termination of Andreas Heldwein by ZMD America, Inc. ("ZMDA"). ZMDA is a California corporation specializing in the design and sale of analog mixed-signal semiconductor solutions and is wholly-owned subsidiary of Zentrum Mikroelecktronik Dresden, AG ("ZMDI"), a German corporation.

Heldwein was originally hired by ZMDI as a Business Line Manager in 2007 and subsequently transferred to ZMDA on August 11, 2008. In late March 2009, Heldwein became the president of ZMDA and managed 27 employees.

ZMDA, however, claims that it became concerned with Heldwein's job performance in early 2009. Specifically, CEO Thilo Von Selchow, who was acting as Heldwein's immediate supervisor, says he was concerned with Heldwein's lack of new business development, his leadership skills, and what Von Selchow described as an overall decline in performance. But Von Selchow positively reviewed Heldwein's performance for each year prior to 2011. Heldwein also received several raises between initially joining ZMDA in 2008 and 2010, when he began earning a salary of $160,000 a year. In addition, at the end of 2010 fiscal year, Heldwein received a bonus of $75,000, which was substantially more than the $20,000 bonus he received in 2009.

On March 15, 2011, Heldwein joined the Idaho Army National Guard. He then attended basic combat training for 11 weeks from April 6, 2011, through June 19, 2011, and attended Officer Candidate School for the last two weeks of July 2011. The first

documented incident suggesting that Von Selchow was considering firing Heldwein was on August 12, 2011, when Von Selchow inquired into the terms of Heldwein's employment contract.

Around the same time that Von Selchow inquired into the terms of Heldwein's employment, another man named Frantz Saintellemy, who had known Von Selchow since 2004, officially began working at ZMDA as the Vice President of Corporate Strategy, Business Development, and Sales North America. Saintellemy signed a letter agreement to join ZMDA back in April 2011. Saintellemy apparently was hired to fill the shoes of Carlo Reburghini, who was about to retire. Von Selchow never informed Heldwein of his decision to hire Saintellemy, which Heldwein found upsetting and inconsistent with the trust and communication that had previously existed between him and Von Selchow during the prior four years.

A few months later, in October 2011, Saintellemy and Von Selchow discussed hiring Ed Lam as the Vice President of Marketing for Analog Products. During these discussions, Von Selchow sent an email to Saintellemy, who had been working at ZMDA for only two months, asking whether they could "take out Andreas [Heldwein] instead?" *Ex. 10 to Heldwein Decl.*, Dkt. 40.  Eight days later, the Medical Line was merged with another line and Heldwein was "demoted" to a Product Manager under the Power and Analog Business Line. In his new position, Heldwein no longer managed employees and now reported to Saintellemy instead of Von Selchow. Heldwein was also told to no longer attend executive planning meetings.

During a discussion on December 5, 2011, Heldwein told Saintellemy that he would be attending Officer Candidate School in the summer 2012, and could be deployed in fall 2012 as part of his National Guard duties. In response, Saintellemy said that ZMDA would work out a way for Heldwein to "exit" if he had to be gone for an extended period. Heldwein immediately told Saintellemy that he did not want to leave the company. Soon thereafter, in January 2012, Saintellemy informed Heldwein that his new supervisor would be the recently-hired Ed Lam. Heldwein considered this a demotion because he was now at least two positions removed from his long time supervisor, CEO Von Selchow.

In June 2012, Heldwein informed Lam that he would be commissioned as an officer in September 2012, and then would be absent for several months for officer training. Heldwein advised Lam that they should start planning on how to cover Heldwein's absence, to which Lam retorted that ZMDA is "running very lean and no one can pick up work for another person" and asked "how do you think you can get your job done if you are gone with the military all the time?" On an earlier occasion, Lam joked about "military intelligence" being an oxymoron.

Heldwein attended a second two-week training in late July and returned August 4, 2012. He also attended a weekend OCS Graduation on September 9, 2012, where he was commissioned as an officer. Three days later, Heldwein's analog product line merged with the LED line and his position was eliminated. David Hubanks, the PPM over the LED line, was tasked with managing the merged product line. Heldwein trained Hubanks

on the products that Hubanks would be taking over. In the spring of 2013, ZMDA hired two employees to support Hubanks and Lam in analog products. These employees' responsibilities were similar to those previously held by Heldwein.

The actions which Heldwein contends violated the USERRA are: 1) ZMDA hired a new product manager following Heldwein's attendance at basic training; 2) ZMDA demoted Heldwein from an executive position to a product manager; 3) Heldwein was again demoted after he informed ZMDA of pending obligations at Officer Candidate School; and 4) ZMDA terminated Heldwein's employment once he became a commissioned officer. *See Compl.* at ¶¶38, 41, 44, 46, Dkt. 1.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case."  *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings.  *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Deveraux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch.*

*Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## ANALYSIS

USERRA "prohibit[s] discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3). Congress enacted USERRA to "clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citation omitted). A violation of USERRA occurs when a person's "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service." 38 U.S.C. § 4311(c)(1).

Under USERRA, the employer's discriminatory motive may be reasonably inferred from a variety of factors, including (1) proximity in time between the employee's military activity and the adverse employment action, (2) inconsistencies between proffered reason and other actions of the employer, (3) an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and (4) disparate treatment of certain employees compared to other employees with similar work records or offenses."*Leisek*, 278 F.3d at 900 (quoting

*Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001). The court may consider "all record evidence," including the employer's "explanation for the actions taken." *Id.*

Heldwein's first claim alleges that: "On or about June 11, 2010, Plaintiff's responsibilities and authority were reduced by Defendant hiring a new product manager following Plaintiff's attendance at basic training constituting a willful and intentional violation of U.S.E.R.R.A." *Compl.* at 7, Dkt. 1. The Court presumes that the date is intended to refer to June 2011 since Heldwein attended basic training from April 6 to June 18, 2011. In its brief, ZMDA claims that no additionally information has been provided about this product manager. *See Def.'s Br.* at 5, Dkt. 31-1. Heldwein has not clarified the identity of this alleged product manager. Heldwein's claim cannot refer to Saintellemy, who was hired as an Executive Vice President, because negotiations were ongoing before Heldwein even announced he would be joining the National Guard. Heldwein also refers briefly to Uwe Guenther, who was hired by Von Selchow in June 2011. However, no further connection is made between how this reduced Heldwein's responsibilities and authority. Because Heldwein has not provided any evidence to substantiate this claim, Count One will be dismissed.

Heldwein's other claims relate to his two demotions and his termination. Construing the evidence in a light most favorable to the non-moving party, the Court finds that there is a genuine issue of material fact about whether Heldwein's time spent with the National Guard was a motivating factor in these actions.

In reaching this conclusion, the Court examined the proximity in time between the employee's military activity and the adverse employment action. *Leisek*, 278 F.3d at 900. There are compelling correlations between ZMDA's actions and Heldwein's military activities. Heldwein joined the National Guard in March 2011 and completed Officer Candidate School on July 29, 2011. Two weeks later, Von Selchow began considering whether he could terminate Heldwein's employment and reviewed his employment contract. Additionally, Heldwein's second "demotion" was shortly after he spoke with Saintellemy concerning his extended training. Moreover, the decision to terminate Heldwein's employment was made shortly after he returned from training in August 2012. Finally, ZMDA terminated Heldwein a mere three days after he was commissioned as on officer and shortly before Heldwein was scheduled to leave for a four-month training.

Additionally, the Court may infer an employer's motive from his acts and remarks. *See Leisek*, 278 F.3d at 900. Yet stray remarks alone are insufficient to establish discrimination in the employment context. *See Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990). Furthermore, mere frustration with an employee's enlistment is insufficient to support an inference that the employee's protected status was a motivating factor. *See Rademacher v. HBE Corp.*, 645 F.3d 1005, 1011 (8th Cir. 2011). In *Rademacher*, the court found that remarks expressing frustration with an enlisted employee's availability were insufficient because the employer "handled [the

MEMORANDUM DECISION AND ORDER - 9

employee's] military absences without comment or incident… and reinstated [him] when he returned." *Id.*

However, even if the employer complies with its obligations, hostility towards the employee's military involvement may support an inference that such involvement was a motivating factor in the employer's actions. *See Staub v. Proctor Hosp.*, 562 U.S. 411 (2011). In *Straub*, the court found that actions such as requiring the employee to work additional shifts to "pay back the department for everyone else having to bend over backwards to cover his schedule" or telling co-workers that the employee's "military duty had been a strain on the department" and they should "get rid of him" supported a finding that his military status was a motivating factor. *Id.*

In this case, Lam's joke about "military intelligence" being an oxymoron was clearly a stray remark and warrants little weight in the Court's analysis. However, Saintellemy's remark about helping Heldwein "exit" from the company upon deployment and Lam's comment that "no one can pick up work for another person" after he learned of Heldwein's training obligation are more troubling. Construing the facts in a light most favorable to Heldwein, a reasonable jury could conclude that these statements are proof that Heldwein's military duties were a motivating factor in its decision to demote him and ultimately terminate his employment. Unlike the employer in *Rademacher*, who expressed frustration about an employee's availability but still accommodated the leave, Saintellemy and Lam conveyed a preference to terminate Heldwein's employment rather than accommodate his extended absence. A reasonable jury could conclude that

Heldwein's termination was a fulfillment of Saintellemy's statement that he would help Heldwein to exit the company as his leave approached. Accordingly, there is a genuine issue of material fact as to whether Heldwein's enlistment and ongoing obligations were a motivating factor in ZMDA's decision to demote and ultimately terminate Heldwein's employment.

Nevertheless, ZMDA contends that summary judgment is appropriate because it would have taken the same actions without regard to Heldwein's protected status. The USERRA statute provides an affirmative defense to ZMDA if it "can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service." 38 U.S.C. § 4311(c)(1). ZMDA alleges that organizational changes and Heldwein's inadequate performance show it would have taken the same actions regardless of whether Heldwein was in the National Guard.

The Court, however, finds that too many material facts remain in dispute to grant summary judgment in favor of ZMDA. ZMDA bears the burden of proving this defense. And the Court simply cannot find that ZMDA met this burden as a matter of law.

The Ninth Circuit has previously recognized in the context of Title VII retaliation cases that, "[i]n some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext." *Dawson v. Entek, Int'l*, 630 F.3d 928, 937 (9th Cir. 2011). Although

the Court does not employ the *McDonnell-Douglas* burden-shifting framework in the context of USERRA, the Title VII cases remain instructive.

Viewing the facts in the light most favorable to Heldwein, each time Heldwein returned from military leave or advised his supervisors that he would be taking military leave in the future, he was somehow demoted until he eventually lost his job. This did not happen just once but on three separate occasions. Based on (1) the positive evaluations Heldwein received before he joined the National Guard, (2) the close proximity in time between Heldwein's military leave and the adverse employment actions taken against him, and (3) the arguably incriminating comments made by Heldwein's supervisors regarding Heldwein's leave, a jury could logically infer that ZMDA would not have demoted and ultimately terminated Heldwein absent his membership in the National Guard.

In addition, Heldwein has come forward with some evidence that his performance was not suffering to the degree ZMD contends. Heldwein's maintains that he grew the Medical and Sensing Business Line revenue by 60% between 2007 and 2011. He also claims that ZMDA has misrepresented the revenue numbers for 2010 and 2011. If true, this evidence casts into doubt ZMDA's alleged reasons for deciding to demote Heldwein and ultimately terminate his employment.  For all of these reasons, the Court will deny ZMDA's motion for summary judgment on Heldwein's remaining claims.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Dkt. 31) is GRANTED in part and DENIED in part. Count One is dismissed but all other claims survive.

DATED: June 16, 2015

B. Lynn Winmill
Chief Judge
United States District Court